FILED'07 NOV 16 13:40USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CARROLL KRAUSS,<br>                Plaintiff, | CV. 06-1065 -PK |
| v. | FINDINGS AND RECOMMENDATION |
| Michael J. Astrue,<br>Commissioner of Social Security,<br>                Defendant. | |

PAPAK, Magistrate Judge:

INTRODUCTION

Plaintiff Carroll Krauss ("Krauss") seeks judicial review of the Social Security Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's final decision should be affirmed

## BACKGROUND

Born in 1950, Krauss completed 8th grade and then completed her GED in 1977. Tr. 67.[1] She completed two years of college in 1999. Tr. 67. From 1988 until 1996, she worked as a housekeeper and a cashier at a convenience store. Tr. 62.

Krauss filed the present applications for DIB and SSI in 2002. Tr. 53-55, 336-339. She originally alleged disability since 1996, Tr. 61, but later changed her alleged onset date to 2000. Tr. 365. Krauss alleges disability due to cervical degenerative disc disease, fibromyalgia, depression, borderline personality disorder, and chronic pain. Tr. 408. Krauss's applications were denied initially and upon reconsideration. Tr. 29-33, 35-37, 341-345, 347-348. Following a 2003 hearing before an Administrative Law Judge ("ALJ"), the ALJ found Krauss not disabled. Tr. 25. The Appeals Council denied Krauss's request for review. Tr. 6-8.

Krauss then filed a civil action in the U.S. District Court of Oregon, case no. 04-cv-1302-JO.[2] In that action, the Commissioner moved to remand Krauss's case to correct errors in the record. Tr. 446B. In an order dated August 5, 2005, the Court granted the Commissioner's motion, and remanded the claim to the Commissioner so that the ALJ could address Krauss's "need for a cane as it affects her ability to use both hands for employment activities while standing." Tr. 446L. The Appeals Council, thereafter, vacated the final decision of the

---

[1] Citations are to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

[2] While Krauss's civil action was pending, she filed a subsequent application for SSI disability benefits, again alleging that she became disabled in 1996. Tr. 539-541. This application was denied initially and upon reconsideration. Tr. 522-526, 528-530. This subsequent application was consolidated with Krauss's first two applications on remand. Tr. 450.

Page 2 - FINDINGS AND RECOMMENDATION

Commissioner, and remanded the case to the ALJ for further proceedings consistent with the order of the court. Tr. 449.

In 2006, the ALJ held a second hearing. Tr. 763-803. In a decision dated March 28, 2006, The ALJ found Krauss disabled as of November 19, 2005, but not prior thereto. Tr. 405-414. The Appeals Council denied review, making the ALJ's 2006 decision the Commissioner's final decision. Krauss presently appeals.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court reviews evidence that both supports and detracts from the ALJ's conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court "may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISABILITY ANALYSIS

The ALJ follows a five-step sequential analysis required by 20 CFR § 404.1520(b)-(f) to determine a claimant's disability status.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental

impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment(s) meets or equals a "listed" impairment(s) in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the ALJ determines the impairment(s) meets or equals a listed impairment, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence to assess the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e), Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the ALJ finds the claimant can do her past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999), 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into

consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g), 416.966, 416.920.

## THE ALJ'S FINDINGS

At step one in the sequential proceedings, the ALJ found that Krauss did not engage in substantial gainful activity during the relevant period. Tr. 407. At step two, the ALJ found that Krauss had the following severe impairments: "fibromyalgia, asthma, cervical degenerative disc disease, lumbar pain, obesity, a depressive disorder, NOS, borderline personality disorder, and a history of alcohol abuse." Tr. 408. The ALJ determined that those impairments did not meet or equal a listed impairment at step three. Tr. 408-409. The ALJ then evaluated Krauss's RFC:

> The claimant has the residual functional capacity to lift and carry up to twenty pounds on an occasional basis and ten pounds on a frequent basis and sit, stand and walk for at least six hours in an eight hour workday. She may use a cane for walking on uneven ground or for long distances. She can only occasionally use ropes, ladders, and scaffolds for climbing and can only occasionally balance or crawl. She should avoid concentrated exposure to dust, fumes, and gases. She is further limited to simple, routine work where she is not primarily responsible for public contact. She works best as part of a team. She should avoid fast paced production jobs.

Tr. 409. The ALJ subsequently found that Krauss has no past relevant work at step four. Tr. 412. At step five, the ALJ found that prior to November 19, 2005, there were a significant number of jobs in the national economy that Krauss could have performed. Tr. 412. After November 19, 2005, the date Krauss turned 55, however, the ALJ found that Krauss was

.

disabled by direct application of Medical-Vocational Rule 202.04.[3] Tr. 413. The ALJ therefore found Krauss disabled as of November 19, 2005, but not prior thereto. Tr. 414.

## DISCUSSION

Krauss contends that the ALJ erred by failing: to comply with the remand order; to discuss the opinions of Krauss's examining physicians; to consider a psychological basis for Krauss's pain; to consider Krauss's obesity; in rejecting lay witness testimony; and in relying on erroneous vocation testimony.

### I.     Remand Order

In his Opinion and Order dated August 5, 2005, Judge Jones remanded the case to the Commissioner and ordered as follows:

> [O]n remand the ALJ must address claimant's need for a cane as it affects her ability to use both hands for employment activities while standing. For example, if the ALJ finds that claimant must use one hand for support, then claimant's functional, vocational capabilities must reflect that limitation as well as any hypothetical posited to a VE concerning claimant's employability.

Tr. 446L-M. Krauss argues that the ALJ did not comply with Judge Jones's Order.[4]

---

[3] The Social Security Administration developed a set of "medical-vocational guidelines" whereby a claimant over the age of 50 could be found disabled quickly if he or she fit certain profiles. Application of these guidelines depend upon the claimant's RFC, age, education, and work experience. For age, the claimant will fall within one of three categories: "advanced age" (55 and over), "individuals approaching advanced age" (age 50-54), and "younger individual" (18 through 49). Under Medical-Vocational Rule 202.04, a claimant who is limited to light work, advanced age, a high school graduate, with unskilled work background is disabled.

[4] In her Opening Brief, Krauss argues that the ALJ did not comply with Judge Jones's remand order and the Appeals Council remand order dated October 3, 2005, which also instructed the ALJ to obtain additional evidence to address Krauss's need for a cane as it affects her ability to use both hands for employment while standing. In her Reply Brief, Krauss clarified that she is only arguing that the ALJ failed to comply with Judge Jones's remand order.

Page 6 - FINDINGS AND RECOMMENDATION

The record before the ALJ on remand contained new evidence regarding Krauss's need for a cane. Specifically, examining physician, Vandana Bindal, MD, stated,

> The claimant can stand and walk about six hours in an eight hour day without any limitations with usual breaks. She can use a cane as an assistive device to support her back for long distances or on uneven surfaces; otherwise she does not require an assistive device.

Tr. 729. In his decision following the remand, the ALJ states "[Krauss] may use a cane for walking on uneven ground or for long distances," Tr. 409, and "[Krauss] admitted that her cane is not prescribed but she has had it for 4 to 5 years," Tr. 410. I am satisfied that the ALJ addressed Krauss's need for a cane as ordered by Judge Jones. The ALJ's finding is based upon the record and should be affirmed.

## II.   Medical Source Statements

Krauss contends that the ALJ improperly rejected the opinions of her examining physician, Dr. Bindal, and examining psychologist, Richard Kolbell, PhD, because neither Dr. Bindal nor Dr. Kolbell is mentioned in the ALJ's decision.[5]

### A.   Dr. Bindal

Dr. Bindal examined Krauss on July 20, 2004. In the "Functional Assessment" section of his report of that examination, Dr. Bindal stated that Krause was capable of the following:

> Claimant can stand and walk about six hours in an eight-hour workday without any limitations with usual breaks. She can use a cane as an assistive device to support her back for long distances or on uneven surfaces; otherwise she does not require an assistive device. The amount of weight [Krauss] can carry is 25 pounds occasionally and 10-15 pounds frequently. There are postural

---

[5]Dr. Bindal examined Krauss on July 20, 2004, Tr. 725, and Dr. Kolbell examined Krauss on July 28, 2004, Tr. 732. Both examinations took place after the first ALJ decision and, therefore, were not considered by Judge Jones.

Page 7 - FINDINGS AND RECOMMENDATION

> limitations and she cannot bend or kneel, but she can climb. There
> are no manipulative limitations on reaching, handling, feeling,
> grasping, or fingering. She has slight reduction in visual acuity in
> long distances, but not a significant problem.

Tr. 729. Likewise, the ALJ formulated Krauss's RFC as follows:

> [Krauss] has the residual functional capacity to lift and carry up to
> twenty pounds on an occasional basis and ten pounds on a frequent
> basis andسit, stand and walk for at least six hours in an eight hour
> workday. She ay use a cane for walking on uneven ground or for
> long distances. She can only occasionally use ropes, ladders, and
> scaffolds for climbing and can only occasionally balance or crawl.
> She should avoid concentrated exposure to dust, fumes, and gases.
> She is further limited to simple, routine work where she is not
> primarily responsible for public contact. She works best not part of
> a team. She should avoid fast-paced production jobs.

Tr. 409.

In the Ninth Circuit, "clear and convincing reasons" are required to reject the treating doctor's ultimate conclusions. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "Clear and convincing reasons are not required, however, when there is no conflict." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cr. 1999). Furthermore, "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart,* 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted).

Here, the record demonstrates that the ALJ accepted Dr. Bindal's opinion. The ALJ's formulation of Krauss's RFC essentially mirrors the limitations in Dr. Bindal's Functional Assessment. And, while the ALJ does not reference Dr. Bindal by name, the ALJ does state that the RFC is based on "careful consideration of the entire record." Tr. 409. I find that the ALJ did not reject Dr. Bindal's opinion.

Page 8 - FINDINGS AND RECOMMENDATION

B.  **Dr. Kolbell**

Dr. Kolbell performed a comprehensive psychodiagnostic evaluation of Krauss on July 28, 2004. Dr. Kolbell ultimately opined as follows:

> Krauss's clinical presentation and history certainly suggests the presence of major depressive disorder that has likely been longstanding and given to periods of acute exacerbation. This has not interfered with stable and sustained employment in the past. * * * * I suspect that, as a result of the combination of her subjective pain complaints, depression, and personality characteristics, all of which play out in a presentation that can be quite caustic and off-putting, Ms. Krauss is likely to have some difficulty functioning in the competitive workplace at this point. I strongly suggest referral to a psychiatrist to evaluate medications and work with a vocational counselor to identify appropriate vocational goals consistent with her intellectual and emotional capacities.

Tr. 736. Dr. Kolbell does not impose any exertional limitations. Dr. Kolbell does note that Krauss "is likely to have some difficulty functioning in the competitive workplace at this point." Tr. 736. That concern is addressed, however, in the ALJ's RFC, which limits Krauss to "simple, routine work where she is not primarily responsible for public contact" and states that Krauss "works best not part of a team" and "should avoid fast-paced production jobs." Tr. 409.

As with Dr. Bindal, the record demonstrates that the ALJ accepted Dr. Kolbell's opinion and incorporated it into the RFC. Krauss's argument that the ALJ failed to discuss Dr. Kolbell's opinion cannot be sustained.

C.  **Psychological Impairment**

Krauss argues that the ALJ failed to consider a psychological basis for her pain and, as a result, the RFC is based on only part of Krauss's limitations. I disagree. At Step 2, the ALJ

determined that Krauss had several severe impairments, including a depressive disorder.[6] Tr. 409. At step three, the ALJ stated, "she has a long history of depression and borderline personality disorder," but found that the impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, subpart P, Regulations No. 4. Tr. 409. Finally, in formulating Krauss's RFC, the ALJ included non-exertional limitations: "She is further limited to simple, routine work where she is not primarily responsible for public contact. She works best not as part of a team. She should avoid fast-paced production jobs." Tr. 409. The ALJ's findings adequately consider Krauss's mental impairments and should be upheld.

### III. Obesity

Krauss contends that the ALJ failed to consider the impact of Krauss's obesity, which the ALJ found a severe impairment in step two, on her ability to work.

SSR 02-01p provides guidelines for evaluating obesity in conjunction with impairments listed in 20 C.F.R. subpart P, Appendix 1 ("the listings"). The SSR states:

> Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing.

SSR 02-01p (2002). In considering a claimant's obesity, the ALJ must articulate reasons for finding that the claimant's obesity, in combination with her other impairments, does not meet a listing. *Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003). It is undisputed that the ALJ did not articulate reasons for finding that the claimant's obesity, in combination with her other

---

[6] In addition, the ALJ discussed Krauss's diagnosis of post-traumatic stress disorder and determined that the diagnosis should not be given any significant weight, a determination not challenged by Krauss.

Page 10 - FINDINGS AND RECOMMENDATION

impairments, does not meet a listing. Such omission may be harmless if the record does not otherwise support obesity as an element of a claimant's impairment. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Krauss has directed the court to five cites in the transcript when physicians and other medical providers diagnosed obesity. Tr. 129, 141, 166, 169, and 727-28. Dr. Bindall noted that Krauss's obesity limited her range of motion in her back and knee joints. Tr. 727-28. Otherwise, none of those medical providers stated that Krauss's obesity limited her functioning. Except for Dr. Bindal's assessment, the medical record is silent as to whether or how Krauss's obesity might have exacerbated her other conditions and, in combination with those other conditions, meet the criteria for a listed impairment. And Dr. Bindal does not indicate that Krauss's obesity impacts her fibromyalgia, asthma, cervical disc disease or lumbar pain. Furthermore, Krauss fails to articulate any theory explaining the impact of her obesity upon her impairments. "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). For these reasons, I find any omission by the ALJ in discussing Krauss's obesity harmless. This court will not recommend reversal for harmless error. *Burch*, 400 F.3d at 679 (9th Cir. 2005).

IV.     **Lay Witness Testimony**

Krauss contends that the ALJ improperly rejected the lay witness testimony of Krauss's brother, who stated that it was very difficult for Krauss to raise her arms to brush her hair. The Commissioner argues that the ALJ's failure to discuss the lay witness testimony is harmless error

because the ALJ's hypothetical to the VE, Dr. Livneh, at the hearing included the limitation "occasionally do overhead work."

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d); 404.1545(a)(3), 416.913(d), 416.945(a)(3), *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). This duty obligates the ALJ to "consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2007). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill*, 12 F.3d at 918-19. The value of lay witness testimony lies in their eyewitness observations, which may "often tell whether someone is suffering or merely malingering." *Id.* at 919. The ALJ may not reject such testimony without comment, but he may reject lay testimony inconsistent with medical evidence. *Lewis*, 236 F.3d at 511. If an ALJ rejects lay witness testimony entirely, he must give reasons germane to the witness. *Id.*

Here, the ALJ did not discuss the lay witness testimony. Nonetheless, I find that the error is harmless for the following reasons. First, as noted by the Commissioner, the ALJ did include a limitation on overhead reaching in one of the hypotheticals posed to the VE. Tr. 796. Second, the lay witness testimony is not consistent with the medical evidence set forth in Dr. Bindal's assessment. Specifically, Dr. Bindal, an examining physician, stated in his functional assessment that "[t]here are no manipulative limitations on reaching, handling, feeling, grasping or fingering." Tr. 729. Finally, I have reviewed *The Dictionary of Occupational Titles* ("DOT") descriptions of the jobs identified by the VE, photocopy machine operator, ticket taker, and assembler of optical goods, and none of those jobs appear to involve overhead work.

Page 12 - FINDINGS AND RECOMMENDATION

V.  **Vocational Expert**

Krauss contends that the ALJ relied on erroneous vocational testimony because the Vocational Expert's ("VE") testimony conflicted with the job requirements contained in the DOT. Specifically, Krauss argues that the job of ticket taker was not suitable because it requires public contact and therefore is inconsistent with the ALJ's determination that Krauss should be "limited to simple, routine work where she is not primarily responsible for public contact." Tr. 409.

In making disability determinations, the Social Security Administration relies primarily on the DOT, but also uses testimony from vocational experts to obtain occupational evidence. "Although evidence provided by a vocational expert generally should be consistent with the [DOT], neither the [DOT] nor the vocational expert evidence automatically trumps when there is a conflict." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). The ALJ must determine whether a conflict exists and then, if it does, "the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Id.*

Here, the ALJ stated to the VE at the outset of his testimony, "And unless you tell me otherwise, I'm going to assume your answers are consistent with the Dictionary of Occupational Titles." Tr. 794. The VE responded "yes." Tr. 794. The VE then testified that Krauss was qualified to work as a ticket taker. The VE acknowledged that the job "has some contact with the public but its very limited as we do know." I find that the ALJ and VE sufficiently addressed the issue of conflict between the VE's testimony and the DOT. Furthermore, I find that the DOT does not conflict with the VE's testimony. The ALJ's finding is based on the record and should be upheld.

## CONCLUSION

For the foregoing reasons, it is the recommendation of this court that the Commissioner's final decision be affirmed and a judgment should be entered dismissing this case with prejudice.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due November 30, 2007. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this 16th day of November, 2007.

_____
Honorable Paul Papak
United States Magistrate Judge

Page 14 - FINDINGS AND RECOMMENDATION